UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                            Chapter 11

NORBERT MEHL,                                         Case No. 23-22429 (SHL)

     Debtor.

-------------------------------------------------------------X

# MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S:**

**NORBERT MEHL**
*Pro Se Debtor*
153 Morris Ln South
Scarsdale, NY 10583
(914) 960-9579

**ALDRIDGE PITE, LLP**
*Counsel to Fay Servicing, LLC*
8880 Rio San Diego Drive
Suite 725
San Diego, CA 92108
(858) 750-7600

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

     Before the Court is Debtor Norbert Mehl's Objection to Claim No. 9 [ECF No. 30] ("Claim Objection") under Rule 3007 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 502(b) and Rule 9074-1 of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York.  The Debtor seeks to disallow the claim filed by US Bank Trust National Association, not in its individual capacity, but solely as Trustee of LSF9 Master Participation Trust ("US Bank").  US Bank has filed a

Response to Debtor's Objection to Claim No. 9-1. See [ECF No. 37] ("US Bank's Response"). For the forgoing reasons, the Court denies the Claim Objection.

## BACKGROUND

Norbert Mehl is the co-owner of property located at 153 Morris Lane South in Scarsdale, NY. Claim Objection ¶ 13. On August 24, 2007, Debtor executed a promissory note and mortgage in the principal amount of $1,275,000.00. Affidavit of Norbert Mehl Pursuant to Local Rule 1007.2 [ECF No. 1] ("Mehl Aff."). The Note is secured by a Mortgage. Claim 9-1, at 36-54 and Mehl Aff. ¶ 6. The Note and Mortgage was transferred to JP Morgan Chase Bank NA ("Chase") by operation of law on September 25, 2008.[1] Claim 9-1 at 63 and Mehl Aff. ¶ 7.

On or about August 10, 2010, Debtor entered into a Loan Modification Agreement with Chase as part of a federal government-sponsored Home Affordable Modification Program (HAMP), which was offered by Chase to its customers nationally. Mehl Aff. ¶ 9. In March 2014, Debtor (and his spouse) failed to meet their payment obligations and defaulted on the loan. Mehl Aff. ¶ 9. Chase transferred the Note and Mortgage to US Bank on March 30, 2015. Claim 9-1 at 65-66.[2]

Debtor and US Bank litigated a lengthy foreclosure proceeding in a New York state court action captioned *U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Norbert Mehl et al.* The State Court Action was filed in December 2016, by filing a Summons and Complaint, together with a notice of pendency, certificate of merit and copies of, among

---

[1]    Washington Mutual Bank, Federal Association ("WaMu") endorsed the Note in blank and delivered it to JP Morgan. See *US Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Norbert Mehl et al.*, Supreme Court of the State of New York, County of Westchester, Index No. 68529/2016 ("State Court Action") Dkt. No. 37 at 4. An Assignment of Mortgage, dated June 11, 2014, was filed with the County of Westchester. Claim 9-1 at 61-63.

[2]    Chase physically delivered the Note to US Bank. See State Court Action, Dkt. No. 37 at 4. An Assignment of Mortgage, dated March 30, 2015, was filed with the County of Westchester. Claim 9-1 at 65-66.

other things, the adjustable rate note and mortgage. In the State Court Action, US Bank sought to foreclose on the promissory note and mortgage secured by the Property. US Bank Response ¶ 5. In January 2017, Debtor filed a motion to dismiss the State Court Action. See State Court Action, Dkt. Nos. 11-27. In November 2017, the state court entered a Decision and Order denying Debtor's motion and affirming US Bank's standing to enforce the Note. See State Court Action, Dkt. No. 37. In November 2017, Debtor filed a motion to reargue the motion to dismiss. See State Court Action, Dkt. Nos. 39-45.

Some months later, the Debtor filed an order to show cause requesting that the Court strike US Bank's pleading with prejudice and for other relief. See State Court Action, Dkt. No. 157. On April 24, 2018, the state court entered a Decision and Order that rejected the Debtor's requests for additional documentation regarding US Bank's standing. See State Court Action, Dkt. No. 185. On July 9, 2018, Chase filed an order to show cause for a protective order against the Debtor; an order to show cause requesting the same relief was also filed by US Bank, Caliber Home Loans, Inc. ("Caliber"), and LSF9 Master Participation Trust.[3] See State Court Action, Dkt. Nos. 196, 204. On August 28, 2018, the state court entered a Decision and Order on the orders to show cause providing that US Bank has "standing as a matter of law… [T]he Court notes that the NYSCEF record in this action demonstrates that numerous documents have been e-filed in this action, including the defendants Mehl themselves, which clearly evidences the chain of custody of the subject Note and Mortgage." See State Court Action, Dkt. No. 252. In December 2018, Caliber and Chase filed motions for summary judgment. See State Court Action, Dkt. Nos. 343, 347. In January 2019, Chase filed an order to show cause with temporary

---

[3] In the State Court Action, Debtor attempted to bring counterclaims against Chase, Caliber and LSF9 Master Participation Trust. See State Court Action, Dkt. No. 56. Caliber was a previous servicer of the loan. US Bank is the Trustee of the LSF9 Master Participation Trust.

3

restraining order seeking to prohibit future filings by Debtor. See State Court Action, Dkt. No. 384.

In November 2019, US Bank filed a motion for summary judgment. See State Court Action, Dkt. No. 312. On June 5, 2019, the state court entered a Decision and Order granting summary judgment to US Bank and appointed a referee to compute the sum owed to US Bank. See State Court Action, Dkt. No. 498 (the "Summary Judgment Order"). On June 5, 2019, the state court entered three (3) additional Decisions and Orders which further rejected the Debtor's claims. See State Court Action, Dkt. Nos. 499, 500, and 501. In one of these Orders, the state court "[o]rdered that the Mehls are hereby enjoined and restrained from filing any further papers in this matter, other than those related to pending motions and scheduling court conferences, without first obtaining leave of court." See State Court Action, Dkt. No. 501. In June 2019, Debtor appealed the state court decisions of June 5, 2019. See State Court Action, Dkt. No. 517. Later that same month, the Debtor filed an order to show cause for leave to renew, reargue, vacate and stay the state court's Decision granting summary judgement. See State Court Action, Dkt. No. 520. On August 7, 2019, the state court entered a Decision and Order denying the Debtor's motion to reargue. See State Court Action, Dkt. No. 539.

In July 2021, the Appellate Court entered a Decision and Order that affirmed the Summary Judgement Order in its entirety. *United States Bank Tr., N.A. v. Mehl*, 195 A.D.3d 1054 (App. Div. 2nd Dept., 2021). The Appellate Court confirmed that US Bank "had standing to commence this action by attaching the note, endorsed in blank, to the summons and complaint when it commenced the action." *Id.* at 1055. The Appellate Court also rejected the Debtor's remaining arguments. *Id.* On November 22, 2021, and again on August 19, 2022, the Appellate Division denied the Debtor's subsequent motions for leave to reargue, or in the alternative, for

leave to appeal to the New York Court of Appeals. See State Court Action, Dkt. Nos. 573 and 574. On April 20, 2023, the state court entered a Decision and Order in which it "caution[ed] the Mehls to refrain from raising issues that have been determined by the appellate division, which is the law of the case and binding on this court. Such conduct may be found frivolous under 22 NYCRR 130-1.1." See State Court Action, Dkt. No. 596. On May 1, 2023, the state court entered the Judgment of Foreclosure and Sale. See State Court Action, Dkt. No. 605. The Judgment of Foreclosure and Sale listed the amount due of $1,477,264.83 pursuant to the Referee's Report from 2019.

One June 6, 2023, Debtor filed this Chapter 11 pro se. On August 22, 2023, US Bank filed its Claim for $1,868,871.46. See Claim No. 9-1. U.S. Bank Trust NA, not in its individual capacity, but solely as Trustee of LSF9 Master Participation Trust, is named as the current creditor as to the Judgment of Foreclosure and Sale. *Id.* In the Proof of Claim, there are extensive documents that establish the basis of US Bank's claim. These include the following:

- An order confirming referee report and judgment of foreclosure and sale (which names U.S. Bank Trust NA, as Trustee for LSF9 Master Participation Trust as the Plaintiff);

- A copy of the original note between Debtor and Washington Mutual Bank FA;

- A copy of the original mortgage;

- The assignment of the mortgage from Washington Mutual Bank FA to JPMorgan Chase Bank NA; and

- The assignment of the mortgage from JPMorgan Chase Bank NA to US Bank Trust NA, as Trustee for LSF9 Master Participation Trust.

In October 2023, Debtor filed this Claim Objection. Debtor contends that this Claim Objection is "solely with respect to its compliance or noncompliance with the Bankruptcy Code and Rules, as distinguished from issues of standing or any other defects pertaining to a prior

5

foreclosure action in [S]tate [C]ourt, which are not being disputed herein." Claim Objection ¶ 8. But nonetheless, Debtor's Claim Objection once again challenges US Bank's status as a creditor by arguing that:

- US Bank has failed to provide evidence that it had physical possession or was the holder of the note;

- That the address listed on the note is not the same as the address of the home and that there appears to be a facsimile endorsement stamp on the original note;

- That the note has previously been modified and traded;

- That the servicers of the note are "notorious bad faith actors"; and

- That US Bank fails to provide evidence that it had physical possession or was the holder of the note. See Claim Objection ¶¶ 12-16.[4]

In keeping with a more traditional claim objection as to a mortgage, Debtor also contends that there are "defects and inconsistencies" between the Claim and the Judgment amounts. See Claim Objection ¶ 17. In its response, US Bank argues that its proof of claim is *prima facie* valid and that Debtor is estopped from raising these objections based on the Rooker-Feldman doctrine and collateral estoppel, which prevent a party that has lost in state court from relitigating the same dispute in federal court.

## DISCUSSION

I. **Standard for Claims Objections**

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly

---

[4] In addition, the Debtor calls the note "the purported Note," thus clearly questioning the validity of the Note. See Claim Objection ¶ 14.

6

filed, it is *prima facie* evidence that the claim is valid. See FED. R. BANKR. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. See 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2013).

"Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof rests on different parties at different times. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute *prima facie* evidence of the validity and amount of the claim … To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); see *In re MF Global Holdings Ltd.*, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant if the objector produces evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (citing *In re Oneida Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."

7

4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013); see also *In re Residential Capital, LLC*, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).

Under Federal Rule of Evidence 201(c)(2), "[t]he court ... must take judicial notice if a party requests it and the court is supplied with the necessary information.". The Court here takes notice of both the filings in the Foreclosure Action and in this bankruptcy case. *Mirena IUD Prods. Liab. Litig.*, 29 F.Supp.3d 345, 350 (S.D.N.Y. 2014) ("The Court may ... rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint.").

### II.    The Rooker-Feldman Doctrine

"The Rooker-Feldman doctrine bars the exercise of federal court jurisdiction 'over claims that effectively challenge state court judgments.'" *In re Residential Capital, LLC*, 501 B.R. 624, 639 (Bankr. S.D.N.Y. 2013) (quoting *Wilson v. Deutsche Bank Nat'l trust (In re Wilson)*, 410 Fed. Appx. 409, 410 (2d Cir. 2011)); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (by vesting the Supreme Court with sole federal authority to review state court judgments, 28 U.S.C. § 1257 precludes district courts, from exercising subject-matter jurisdiction in certain cases that they would otherwise be empowered to adjudicate). "Rooker-Feldman bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005)). There are four requirements for the application of the Rooker-Feldman doctrine: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain[] of injuries caused by [a] state-court

8

judgment[.] Third, the plaintiff must invit[e] district court review and rejection of [that] judgment[]. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced…" *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84, 85 (2d Cir. 2005).

The Supreme Court has limited the scope of Rooker-Feldman by noting that in both of the two original cases from which the doctrine is derived, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon*, 544 U.S. at 291. Thus, one court has observed that "[i]t is clear from the language in *Exxon* that the Rooker-Feldman doctrine can bar a federal-court action only when that action is filed after the related state-court proceedings have already 'ended.' *Zokaites Properties v. La Mesa Racing, LLC*, 2012 WL 3144127, at *8 (W.D. Pa. Aug. 1, 2012) (quoting *Exxon*, 544 U.S. at 291).

US Bank argues that the four parts of the Rooker-Feldman doctrine are met here. The Court agrees. "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (dismissing adversary complaint under the Rooker-Feldman doctrine seeking to reverse the state court foreclosure judgment); see, e.g., *Ford v. US. Dept. of Treasury IRS*, 50 Fed. Appx. 490 (2d Cir. 2002) (holding that Rooker-Feldman barred plaintiff's attempt to seek reversal of the state court foreclosure judgment); *In re Demarais*, 2008 WL 3286218, at *4 n.6 (Bankr. N.D.N.Y. 2008) (noting that vacatur of the underlying judgment of foreclosure and sale would be inappropriate under the Rooker-Feldman doctrine).

As the Court in *Moise* explained, the Rooker–Feldman doctrine bars not only claims that involve direct review of a state court action, but also "claims that are 'inextricably intertwined'

9

with a state court decision." *Pharr v. Evergreen Garden, Inc.*, 123 Fed.Appx. 420, 422–23 (2d Cir. 2005). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25 (1987); *In re Sanders*, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009) ("[t]he Rooker–Feldman doctrine 'strips federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.' "). It is not surprising, therefore, that where a movant has obtained a valid state court foreclosure judgment establishing a bank's status as a secured creditor, the Rooker-Feldman doctrine prevents a bankruptcy court from revisiting the status of that creditor. See *Agard v. Select Portfolio Servicing, Inc.*, 2012 WL 1043690 at *4 (E.D.N.Y. Mar. 28, 2012); *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F.Supp.2d 456, 469 (S.D.N.Y. 2006) ("A district court lacks any authority to review final judgments of a state court."); *Exxon Mobil Corp.*, 544 U.S. at 283.

In this case, like in *Agard*, US Bank had already obtained a Foreclosure Judgment from the Westchester County Supreme Court before the matter came before this Court. See US Bank Response, Ex. 12. Ruling in favor of the Debtor would require the Court to conclude that the New York state court was wrong in finding that US Bank had standing to foreclose. Therefore, the Rooker-Feldman doctrine is a bar to this Court revisiting an issue already adjudicated and decided by the state court. See *Agard*, 2012 U.S. Dist. LEXIS 43286, 2012 WL 1043690 at *4.

A brief review of the four specific requirements of Rooker-Feldman here confirm this result. The first requirement is that the plaintiff lost in state court. This is clearly established here through the Foreclosure Judgement entered against the Debtor by the Westchester County Supreme Court. See State Court Action, Dkt. No. 605.

10

The second requirement is the plaintiff in the federal trial court is complaining of injuries caused by the state court judgment in the foreclosure lawsuit.  Debtor's arguments in the Claims Objection here all seek to challenge US Banks's standing as a creditor as to the mortgage on the property.  That was the subject of the foreclosure, a proceeding that the Debtor lost despite repeated efforts to raise these same issues.

For example, the Debtor now argues that US Bank failed to provide any evidence that it had physical possession and is/was the holder of the original Note as of the Petition Date.  But this issue was addressed in the state court, which found as follows:

> As explained by US Bank, and demonstrated by the documents submitted for court review, after the Mehls executed and delivered the Note to WaMu on August 24, 2007, WaMu endorsed the Note in blank and delivered it to JP Morgan, which then physically delivered the Note to US Bank.  Moreover, the fact that US Bank was the holder of the Note at the time of commencement is confirmed by its counsel, who, in his affirmation in opposition, attests to having personally examined the original Note prior to commencement of the action.

See State Court Action, Dkt. Nos. 351 and 498.  Indeed, the Appellate Division, Second Judicial Department specifically held that "[t]he plaintiff [US Bank] established, *prima facie*, that it had standing to commence this action, by attaching the note, endorsed in blank, to the summons and complaint when it commenced the action (see *Wells Fargo Bank, N.A. v. Bakth*, 189 A.D.3d 1315; *PennyMac Corp. v. Arora*, 184 A.D.3d 652, 653-654)."  See State Court Action, Dkt. No. 557, at 2.

The Debtor here also argues that there was fraud in the conveyance of the mortgage here. See Claim Objection ¶ 15.  But the state court has already considered and rejected Mr. Mehl's argument of fraudulent conveyance:

> there was no merit to the Mehls' claims that plaintiff lacks standing and no merit to the Mehls' claims that WaMu's assignment of the Mortgage to

11

> Chase constituted a fraudulent conveyance. Additionally, the Decision and Order recites and finds that the plaintiff's complaint alleges that plaintiff is the current holder of the subject Note and Mortgage; that the Note was delivered to it prior to the commencement of this action; that plaintiff fully complied with all conditions precedent to accelerating the Note and Mortgage, including all applicable notice and filing requirements under RPAPL 1304 and 1306; the original Note, with pertinent endorsements and/or allonges was sent to plaintiff's counsel prior to commencing this action and remains in counsel's possession; and the Mehls defaulted under the terms of the Note and Mortgage.

See State Court Action, Dkt. No. 37, at 4-5.

The Debtor also complains that the property address on the Note is different from the Debtor's actual address. See Claim Objection ¶ 13. But once again, the state court addressed this issue in a footnote in its first Decision and Order. See State Court Action, Dkt. No. 37, at 2 ("It appears from the deed that the correct street address for the Premises is 153 South Morris Lane, Scarsdale, New York.") The state court also addressed this in a footnote in its April 23, 2018 Decision and Order. See State Court Action, Dkt. No. 185, at 1. ("The correct street address for the premises is 153 South Morris Lane, Scarsdale, New York according to the deed.")

In a similar vein, Debtor argues

> [o]n its back page, the Note contains what appears to be a facsimile endorsement stamp of the WaMu's former Vice President, Cynthia Riley. As such, the Proof of Claim is self-contradictory in the sense that it states that the creditor did not acquire its claim from someone else even though the creditor is not a party to the attached Note and the Note was endorsed in blank.

See Claim Objection ¶ 13. Once again, the state court dealt with this issue in its decision to deny Debtor's motion to dismiss.

> In New York, a plaintiff need not provide the factual details of delivery of a note to establish that it came into possession of the note at any particular time (see JPMorgan Chase Bank, NA. v Weinberger, 142 A.D.3d 643, 645 [2d Dept 2016]; UCC 3-204 [2]), and once a note is transferred, the

12

> mortgage securing the note passes as incident to the note (see Aurora Loan Servs., LLC v Taylor, 114 A.D.3d at 361; Nationstar Mtge., v Catizone, 127 A.D.3d 1151" 1152 [2d Dept 2015]).  As explained by US Bank, and demonstrated by the documents submitted for court review, after the Mehls executed and delivered the Note to WaMu on August 24, 2007, WaMu endorsed the Note in blank and delivered it to JP Morgan, which then physically delivered the Note to US Bank.  Moreover, the fact that US Bank was the holder of the Note at the time of commencement is confirmed by its counsel, who, in his affirmation in opposition, attests to having personally examined the original Note prior to commencement of the action."

See State Court Action, Dkt. No. 37, at 4.

The Debtor also complains that the Note "has already been modified and traded on several occasions in the secondary market since originally issued by WaMu in 2007, and may have continued to be traded and changed hands in the bankruptcy claims trading market or through other means, irrespective of an underlying state court foreclosure action and Judgment of Foreclosure and Sale."  See Claim Objection ¶ 14.  But US Bank Trust N.A., as Trustee of LSF9 Master Participation Trust, is the party who received the foreclosure judgement.  The party in the underlying action who obtained the judgment—US Bank—is the same party who filed the proof of claim, making any prior chain of custody irrelevant for the purposes of the Foreclosure and the Bankruptcy Claim.

The Debtor argues that "[t]he Proof of Claim also contains various other defects and inconsistencies" when it comes to the amount of the Claim.  This argument is more consistent with a traditional Claims Objection with regards to a mortgage.  Mr. Mehl argues that:

- LSF9 failed to provide any supporting documentation pertaining to its Proof of Claim disclosures section showing how it arrived from a pre-judgment amount of $1,477,264.83 to a total amount of secured claim in the amount of $1,868,871.46;

- LSF9 failed to provide copies of its respective legal bills and other itemized charges and expenses during said period, including over $28,000 in legal fees charged on 06/06/2023, the actual Petition Date;

13

- LSF9 inexplicably increased the alleged interest per diem in the amount of $69.16 Mortgage Principal Balance of $1,139,155.57 as of the 06/06/2023, the Petition Date (see Proof of Claim, Form 410A Mortgage Proof of Claim Attachment, Part 5: Loan Payment History from First Date of Default, as of 06/06/2023) to a post-judgment interest per diem in the amount of $100.38 based on a principal balance of $1,831,911.43, and applied compounded interest upon such balance, representing compensatory or penalty charges upon legal fees and other items in violation of the mortgage default rate terms.

See Claim Objection ¶ 17. The total amount of the state court judgment of $1,477,264.83—plus the calculation of interest and fees—was decided in the state court and thus cannot be challenged here.[5] For amounts beyond the $1,477,264.83, US Bank's Proof of Claim provides a spreadsheet accounting for payments received, payments due, escrow disbursements, and various fees from the date of default to the date of filing. See Claim 9-1 at 5-11. In addition, US Bank provides a "Proof of Claim Disclosures" that breaks down the amounts calculated that comprise the Secured Claim. This Disclosure includes notations that show the interest rate charged both pre and post judgment and a further break down of the per diem based on the amount owed at the time of calculation. Given all the these details, US Bank's Claim is entitled to *prima facie* validity. See FED. R. BANKR. P. 3001(f). See also, *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). Although Mr. Mehl argues against the validity of the calculation, he has not provided any evidence which refutes any specific aspect of the claim and, accordingly, he is not entitled to any relief as to these calculations.

---

[5] The Judgement of Foreclosure and Sale entered on May 1, 2023 states: "The Referee shall then pay to the Plaintiff or its attorney the following: Amount due per Referee's Report: $ 1,477,264.83, with interest at the note rate from February 1, 2014 to June 1, 2019, together with any advances as provided for in the note, mortgage and modification agreement which Plaintiff has made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation, upon presentation of receipts for said expenditures to the Referee, all together with interest thereon pursuant to the note, mortgage, and modification agreement, and then with interest from the date of entry of this judgment at the statutory rate until the date the deed is transferred." See State Court Action, Dkt. No. 605, at 7.

14

The third requirement of Rooker-Feldman is that the federal plaintiff invites review of a state court judgment. This requirement is met for all the reasons set forth above, as Debtor raises the same "defenses" as grounds for objection which were considered and rejected by the state court.

The fourth requirement is the state court judgment was entered before the plaintiff's federal suit commenced. The state court judgment was entered on May 1, 2023 and this bankruptcy case was filed on June 6, 2023. Therefore, the state court judgement was entered before Debtor's federal suit commenced.

### III.   Res Judicata

The doctrine of res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Claim preclusion bars claims that were advanced, or should have been advanced, in a previous lawsuit between identical parties. *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347, 712 N.E.2d 647 (1999). "Res judicata is designed to provide finality in the resolution of disputes to assure that parties may not be vexed by further litigation." *Reilly v. Reid*, 45 N.Y.2d 24, 28, 379 N.E.2d 172 (1978). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol* (In re Sokol), 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted).

15

New York has adopted a transactional analysis for res judicata issues. It provides that "[o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158 (1981). In *O'Brien*, all of the conduct was raised in the prior suit and, with "[t]hat proceeding having been brought to a final conclusion, no other claim may be predicated upon the same incidents." *Id.* at 357. "When alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts as such would constitute a single 'factual grouping,' the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." *Id.* at 357-58.

Res judicata has four requirements: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (quoting *EDP Med. Comput. Sys., Inc. v. United States*, 430 F.3d 621, 624. (2d Cir. 2007)).

As to the first and second requirements, the Court finds that the prior decision at issue constituted a final judgment on the merits by a court of competent jurisdiction. See *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992) ("Res judicata applies to judgments by courts and by administrative agencies acting in an adjudicative capacity.") To the extent that any of the prior decisions were appealed by Debtor, those appeals have been denied. The third requirement of *res judicata* is satisfied because the Claims Objection here involves the same parties—Debtor and US Bank—as were involved in prior state court litigation. As to the fourth and final requirement, the Court finds that the Claim Objection involves the same claims as were addressed in the state court decisions. Thus there is an "identity of causes

16

of action . . . which means that the second action must involve the same 'claim' or nucleus of operative fact' as the first." *Celli v. First Nat'l Bank of Northern New York (In re Layo)*, 460 F.3d 289, 292 (2d Cir. 2006). While Debtor's Objection raises numerous issues, all of them have previously been addressed or could have been addressed in the prior state court proceedings.

State and federal courts in New York have used res judicata where – as here – a party attempts to relitigate foreclosure judgments, which operate as an adjudication on the merits. *See, e.g.*, *Nath v. Select Portfolio Servicing, Inc.*, 2017 U.S. Dist. LEXIS 28095, 2017 WL 782914, at *10 (S.D.N.Y. Feb. 28, 2017), *aff'd*, 732 F. App'x 85 (2d Cir. 2018) ("A Foreclosure Judgment is final as to all questions at issue between . . . parties, and concludes all matters of defense that were or might have been litigated in the Foreclosure Action.") (internal citations omitted); *Gray v. Bankers Trust Co. of Albany, N.A.*, 82 A.D.2d 168, 442 N.Y.S.2d 610, 612 (N.Y. App. Div. 3d Dept. 1981) (A "judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded."); *83-17 Broadway Corp. v. Debcon Fin. Servs, Inc.*, 39 A.D.3d 583, 835 N.Y.S.2d 602, 604 (N.Y. App. Div. 2d Dept. 2007) ("Since the plaintiff defaulted in both foreclosure actions and did not successfully move to vacate its defaults, the judgment of foreclosure and sale entered in those actions preclude it from litigating the validity of the mortgages in this action."); *New Horizons Investors, Inc. v. Marine Midland Bank, N A.*, 248 A.D.2d 449, 669 N.Y.S.2d 666, 667 (N.Y. App. Div. 2d Dept. 1998) (holding plaintiffs are precluding from attempting to relitigate claims because they failed to raise those claims as defenses in the foreclosure action); *Dae Yang v. Korea First Bank*, 247 A.D.2d 237, 668 N.Y.S.2d 363, 364 (N.Y. App. Div. 1st Dept. 1998).

**IV.    Collateral Estoppel**

By contrast to the broad bar of res judicata, collateral estoppel, or "issue preclusion" bars "relitigation of an issue which has necessarily been decided in that prior action or proceeding and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling." *David v State of New York*, 157 A.D.3d 764 (2018) (quoting *Capellupo v Nassau Health Care Corp.*, 97 A.D.3d 619, 621, 948 N.Y.S.2d 362 (2012); see *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985)). "The party asserting the conclusive effect of a prior judgment has the burden to establish it." *Bravo v Atlas Capital Group, LLC,* 196 A.D.3d 627, 629, 152 N.Y.S.3d 134 (2021). (See *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664, 564 NE2d 634, 563 N.Y.S.2d 24 [1990])

Under New York law, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487 (1984); *Colon*, 58 F.3d at 869. Two requirements must be met for collateral estoppel to apply: (1) an identical issue was necessarily decided in the prior action and is decisive of the present action, and (2) there was a full and fair opportunity to contest that prior determination. *Buechel v. Bain*, 97 N.Y.2d 295, 303–04, 766 N.E.2d 914 (2001); *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146–47 (E.D.N.Y. 2016).

Two requirements must be met for collateral estoppel to apply: (1) an identical issue was necessarily decided in the prior action and is decisive of the present action, and (2) there was a full and fair opportunity to contest that prior determination. *Buechel v. Bain*, 97 N.Y.2d 295,

18

303–04, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001); *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146–47 (E.D.N.Y. 2016).

The state court issued the Judgment of Foreclosure and Sale after a lengthy litigation process wherein the Debtor raised numerous challenges to the status of US Bank, wich were rejected by the state court. Accordingly, the Court finds that Debtors attempt to re-litigate the standing of US Bank here is barred by the doctrine of collateral estoppel because (1) an identical issue was necessarily decided in the prior action and is decisive of the present action; and (2) there was a full and fair opportunity to contest that prior determination.

V.    Conclusion

For all the reasons set forth above, Debtor's Objection is hereby denied. Given Mr. Mehl's history of seeking to relitigate issues after receiving an adverse decision, the Court advises Mr. Mehl that any attempt to do so here may result in sanctions. See Rule 11 of the Federal Rules of Civil Procedure.[6]

**IT IS SO ORDERED.**

Dated: White Plains, New York
       June 24, 2024

                                            */s/ Sean H. Lane*
                                            UNITED STATES BANKRUPTCY JUDGE

---

[6] No doubt mindful of Mr. Mehl's litigation history, US Bank filed a letter with the Court early on its this bankruptcy to provide the Court with the background facts about the State Court Action and its view that the foreclosure judge then barred Mr. Mehl from relitigating US Bank's standing as a creditor. See ECF No. 22. In light of the history of that litigation, the Court explained to Mr. Mehl at a status conference held on September 7, 2023, that the Rooker-Feldman doctrine prevented him from relitigating matters that has already been presented to – and decided by – the state court. Notwithstanding this discussion, Mr. Mehl filed this Claim Objection.

19